IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

MARK W. BLOND, Jr.,

        Petitioner,

vs.

HAROLD GRAHAM, Superintendent,
Auburn Correctional Facility,

        Respondent.

No. 9:12-cv-1849-JKS

MEMORANDUM DECISION

Mark W. Blond, Jr., a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Blond is in the custody of the New

York State Department of Corrections and Community Supervision and is incarcerated at the

Auburn Correctional Facility. Respondent has answered, and Blond has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

The Appellate Division summarized the facts of the case as follows:

> [Blond] was indicted on 10 counts stemming from his sexual abuse and rape of a
> 15-year-old victim, his attempted assault with a brick on his wife [Kasha Hudson], who
> was the victim's aunt, and property damage he caused to his wife's vehicle when he
> repeatedly drove his own vehicle into it. When he was arrested and taken into custody,
> he also caused property damage to a police vehicle by shattering its window in a violent
> rage. Following a jury trial, [Blond] was convicted of rape in the first degree, rape in the
> third degree, criminal sexual act in the third degree, sexual abuse in the third degree,
> attempted assault in the second degree, endangering the welfare of a child, criminal
> mischief in the third degree and criminal mischief in the fourth degree. [The New York]
> Supreme Court . . . sentenced [Blond] to an aggregate prison term of 22 ⅔ years
> followed by 20 years of postrelease supervision.

*People v. Blond*, 946 N.Y.S.2d 663, 665 (N.Y. App. Div. 2012).

Blond filed a *pro se* motion to vacate the judgment and set aside the sentence pursuant to New York Criminal Procedure Law ("CPL") §§ 440.10 and 440.30. Blond raised a litany of ineffective assistance of counsel claims, including allegations that counsel: 1) failed to move for a mistrial after defense witness Jean Blond was arrested outside the courtroom following her testimony; 2) failed to move for a mistrial based on "threatening gestures" made by Rene Minus to members of the jury; 3) failed to prepare for trial; 4) failed to call several lay witnesses; 5) failed to secure Blond's right to testify before the grand jury; 6) failed to request an adjournment during the *Huntley* hearing[1] to review 911 calls and police recordings; 7) failed to allow Blond to testify at the *Huntley* hearing; 8) failed to move for a change of venue; 9) failed to advise Blond of a favorable plea deal; 10) unconstitutionally excused all females from the jury pool; 11) waived Blond's right to be present at "crucial stages of trial," including conferences and sidebars; 12) failed to challenge the racial composition of the jury; 13) failed to object to the badgering of Blond on cross-examination; 14) failed to suppress physical evidence taken from Blond's home as well as Blond's DNA sample; 15) failed to obtain Blond's work and school records as well as records of Hudson's whereabouts to disprove that the prior bad acts ever occurred; 16) failed to object to the introduction of an email from Blond; 17) failed to object to the admittance of a tampered audio/video recording; 18) failed to interview and investigate the People's DNA testing experts prior to trial; 19) failed to inquire into lab protocols for DNA testing; 20) failed to call expert witnesses; 21) failed to investigate Blond's claim that around the time of the alleged crimes, his wife was giving him Zoloft which had not been prescribed to him;

---

[1]      *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965). The term "*Huntley* hearing" is a shorthand reference to a hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

22) failed to make post-trial motions; 23) failed to competently argue for a minimum sentence; 24) failed to object to or request a hearing on the fines imposed on Blond; 25) failed to object to the late disclosure of DNA evidence; 26) failed to reveal that certain witnesses had prior convictions or any pending criminal actions; 27) failed to show any interest in explaining his right to a speedy trial to him; 28) failed to argue to sever the indictment; 29) failed to obtain police records of an incident in which Blond's wife allegedly battered him; 30) failed to select and impanel an impartial jury; 31) failed to object to his wife testifying on the ground of marital privilege; 32) failed to properly argue to set aside the sentence; 33) had only 6 months' experience in handling sex crimes cases; 34) failed to move for a mistrial on various occasions; 35) failed to timely move to suppress his statement to police before the grand jury indicted him; and 36) threatened Blond that if he did not take the plea deal he could face 25 years' imprisonment.

In addition, Blond argued that: 1) his right to equal protection was violated because the county and state caps money it provides for the defense of the criminally accused; 2) the trial court failed to question the potential jurors about their attitudes "towards sex crimes and/or crimes against teens and/or crimes against multi-gender's [sic] and/or crimes against multi-races"; 3) the trial court failed to inquire as to Blond's competency; 4) the jury instructions were unconstitutional; 5) the People withheld and/or delayed production of evidence; 6) the bailiff committed misconduct by "grabbing his gun" in front of the jury when Blond walked by him; 7) the "conflict defender" yelled "Give him 100 years" and many county workers were present during trial, which had "a great impact [on] the trial and the conviction"; 8) the trial judge was biased; 9) his right to due process was violated at sentencing because the court imposed a stricter

sentence without offering any justification for doing so; 10) a restitution hearing should have been held on fees imposed on Blond as part of his sentence; 11) he was not fully allowed to address the sentencing court; 12) his sentence was an abuse of discretion and a violation of the right to due process, equal protection, and the right against cruel and unusual punishment; 13) the prosecution implied while cross-examining Blond that if he was telling the truth then the People's witnesses were lying; 14) the state failed to preserve DNA samples for testing at the time the crime was committed; 15) the People failed to turn over various documents; 16) the prosecution played to the fears and sympathies of the jury; 17) the police interfered with his right to access to counsel; 18) he was prejudiced by the presence of a juror who was sleeping; 19) hearsay evidence was impermissibly admitted into evidence at trial; 20) exculpatory evidence was not admitted at trial; 21) the court should perform a polygraph on both himself and the witness; 22) public defenders are not invested in the cases they are working on and are just out to make money; 23) the grand jury proceedings were defective and prejudicial; 24) the prosecution committed misconduct by leading the victim in her testimony; 25) the prosecution denied him the opportunity of confronting several witnesses; 26) the prosecution failed to prove that he was guilty of attempted assault in the second degree; 27) during the grand jury proceedings, Blond's wife testified as to a "domestic violence situation of a family court nature" which prejudiced him, and otherwise testified to information protected by marital privilege; 28) the prosecution over-charged Blond with duplicitous charges; 29) the prosecution purposely suppressed his interrogation; 30) the prosecution vindictively "up[ped] the anti [sic] of crimes charged, to gain a tactical advantage at [the] bargaining stage"; 31) although our legal system is "accusatory" in nature, the grand jury process is unconstitutionally an "inquisitory" system; 32) the police used

force upon his arrest rendering his statements to police involuntary; 33) the victim did not resist his advances and there was doubt as to whether he used force or threats against her; 34) the jury should have been sequestered; and 35) the sentence was excessive and cruel and unusual.

The trial court denied the motion, concluding that Blond's ineffective assistance of counsel claims were "conclusory and . . . not supported by any other affidavit or evidence." The court further denied Blond's claims of jury improprieties, that his sentence was cruel and unusual, and that he was unlawfully searched and seized on the ground that they should be brought on direct appeal pursuant to CPL § 440.10(2)(c). The court did not otherwise address Bond's numerous claims.

Blond sought leave to appeal the denial of his motion to vacate the judgment and to consolidate that appeal with his direct appeal. The Appellate Division granted that motion.

Blond then moved *pro se* to set aside his sentence on the ground that it was "Constitutionally harsh, excessive and greatly disproportioned [sic] to any of the pre-trial and trial plea bargains," and that counsel was ineffective. The trial court denied the motion on the ground that he had already raised the same claims in his motion to set aside the verdict.

Through counsel, Blond directly appealed, arguing that: 1) a new trial was required based on the court's failure to conduct an inquiry of a sleeping juror; 2) trial counsel was ineffective for failing to move to dismiss the indictment and properly advise Blond of the maximum sentence for first-degree rape; 3) the admission of *Molineux/Ventimiglia*[2] evidence deprived

---

[2]     *People v. Molineux*, 61 N.E. 286 (N.Y. 1901); *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y. 1981). *A Molineux/Ventimiglia* hearing is a New York state pre-trial hearing on the admissibility of evidence of prior uncharged crimes or other bad acts by the defendant in a criminal trial.

Blond of a fair trial; 4) the court erred in denying Blond's request to offer the testimony of three social workers to impeach the victim's credibility; 5) the jury charge was insufficient; and 6) his sentence was harsh and excessive. Blond filed a supplemental *pro se* brief in which he additionally argued that: 1) trial counsel was ineffective for a) failing to advise him of a favorable plea, b) failing to investigate and prepare for trial, and c) failing to object to the indictment as duplicitous; 2) counts 1 through 4 and 8 were based on duplicitous acts; 3) prosecutorial misconduct denied him his right to a fair trial; and 4) the evidence was legally insufficient to support his conviction and the verdict was against the weight of the evidence. The Appellate Division unanimously affirmed Blond's judgment of conviction in a reasoned opinion.

Blond initially filed a *pro se* application for leave to appeal to the Court of Appeals. Blond argued that: 1) the trial court failed to conduct a proper inquiry of a sleeping juror as required by state law; 2) counsel was ineffective for failing to a) secure his right to testify before the grand jury and move to dismiss the indictment, b) properly advise him of a plea bargain and his sentencing exposure, c) move to dismiss counts 1 through 4 as duplicitous, d) investigate and prepare for trial, and e) compel the court to review the grand jury minutes and move to dismiss or reduce the charges; 3) the court abused its discretion in admitting the *Molineux/Ventimiglia* evidence; 4) the court erred in precluding him from presenting the testimony of three social workers; 5) the jury charge failed to relate the facts to the application of law; 6) the prosecutor committed misconduct; 7) the evidence was legally insufficient to support conviction on counts 1-4 and 6; and 8) the trial court should have dismissed counts 1-4 as duplicitous. Blond then filed a counseled leave application, in which he argued that: 1) the trial court's *Molineux/Ventimiglia* ruling was an abuse of discretion; 2) the trial court erred in excluding the

testimony of three social workers to impeach the credibility of the victim's complaints of sexual abuse; and 3) his sentence was an abuse of discretion given the discrepancy between the pre-trial plea offer and the aggregate sentence imposed after trial. Blond subsequently filed a letter motion stating that counsel had failed to ask the Court of Appeals to "to review all issues raised in the Appellate Division." The Court of Appeals summarily denied leave to appeal. Blond filed his Petition for Writ of Habeas Corpus with this Court on October 22, 2012.

## II. GROUNDS RAISED

Blond raises the following claims in his *pro se* Petition before this Court: 1) trial counsel was ineffective for failing to: a) properly advise him of a favorable plea offer, b) advise him of his maximum sentencing exposure, c) secure his right to testify before the grand jury, d) object to the duplicitous nature of counts 1 through 4 of the indictment, e) investigate and prepare for trial, and f) move to inspect the grand jury minutes and dismiss the indictment; 2) he was deprived of a fair trial because a juror was sleeping during trial and the court failed to conduct a proper inquiry of that juror; 3) counts 1 through 4 of the indictment were duplicitous; 4) the court erroneously admitted *Molineux/Ventimiglia* evidence and failed to give a limiting instruction; 5) the prosecutor committed misconduct; 6) the court improperly denied his request to present testimony of three social workers who would undermine the victim's credibility; 7) the evidence was legally insufficient to support his conviction; and 8) the trial court vindictively sentenced him for exercising his right to trial.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d

200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo

standard to a federal claim not reached by the state court). In so doing, the Court presumes that

the state court decided the claim on the merits and the decision rested on federal grounds. *See*

*Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman*

interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This

Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011)

(rejecting the argument that a summary disposition was not entitled to § 2254(d) deference);

*Jimenez*, 458 F.3d at 145-46.

## IV. DISCUSSION

A.      Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts.

28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be

deemed exhausted, a claim must have been presented to the highest state court that may consider

the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to

invoke one complete round of the State's established appellate process, a criminal defendant

must first appeal his or her conviction to the Appellate Division and then seek further review by

applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d

Cir. 2005). Blond failed to raise his vindictive sentence claim in either his *pro se* or counseled

petitions for review to the New York Court of Appeals, and it is accordingly unexhausted. *See*

ECF 32-20; 32-19. *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991).

Respondent also correctly points out that Blond has only partially exhausted other claims because he presented those claims on direct appeal only on state-law grounds. Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). Blond raised the claims that the court should have conducted an inquiry with respect to a sleeping juror, that counts 1 through 4 of the indictment were duplicitous, and that the court abused its discretion in admitting the *Molineux/Ventimiglia* evidence, solely on state grounds and they are accordingly also unexhausted.

Because Blond's unexhausted claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Blond cannot bring a motion to vacate as to these claims. CPL § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Blond cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey*, 933 F.2d at 120-21.

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121. Because Blond may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Despite Blond's failure to exhaust a number of his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court will not dismiss the unexhausted claims solely on exhaustion grounds and instead reach the merits of the claims as discussed below.

B.      Ineffective Assistance of Counsel (Claim 1)

1.      *Strickland and New York standards on habeas review*

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the

defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Blond must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial.'" *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the

circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

2. *Failure to properly advise of plea offer and maximum sentencing exposure (Claims 1(a) & (b))*

At arraignment, the trial court informed Blond of his maximum sentencing exposure, stating that he could be subject to 25 years' imprisonment if found guilty of first-degree rape, a class B felony. The court also informed Blond of his maximum sentencing exposure on each of the remaining 9 charges.

Prior to trial, the court informed Blond in open court that the prosecution had made a plea offer of 3 ½ years' imprisonment and that the court would accept the offer if Blond agreed after conferring with defense counsel. The court further advised Blond that defense counsel had requested that the offer remain on the table until the following day prior to jury selection. After that, the prosecution would withdraw the offer.

Just prior to jury selection the following day, the court again stated that the prosecution had offered 3 ½ years' imprisonment followed by post-release supervision to be determined at the discretion of the court.  Defense counsel advised the court that Blond did not want to avail himself of that offer.  Defense counsel requested to make a record with respect to Blond's rejection of the offer, stating as follows:

| | |
|---|---|
| [DEFENSE COUNSEL]: | [W]ith regard to the offer, and that is that I have advised [Blond] that I believe he should take the offer, particularly in light of two B felony counts present in the indictment, which I believe there is a substantial likelihood of conviction on, and for each of which he could receive up to four years in prison.  Obviously if the offer is 3 ½ it would be an advantageous plea-bargain offer or advantageous plea, at least in my estimation. |
| THE COURT: | I assume you discussed with your client the full range of sentencing, if you will, that will be at the Court's discretion at the conclusion of the case in the event that he is found guilty? |
| [DEFENSE COUNSEL]: | I have, your Honor. |
| THE COURT: | I assume you've also discussed with him that based upon the various counts in this indictment, the factual recitations, if you will, under each of these counts that in the event that [Blond] is found guilty of each of these counts that the Court has the discretion to sentence [a] certain number of these consecutively? |
| [DEFENSE COUNSEL]: | Yes, your Honor, we have discussed that. |

According to Blond, after the victim testified against him, he was offered 7 years' imprisonment "and the offer never was tak[en] off the table."  Blond nevertheless rejected that plea offer, continuing to "protest[] his innocence."

Blond argues that trial counsel was ineffective for failing to properly advise him of the original plea offer of 3 ½ years' imprisonment.  Blond contends that counsel failed to adequately

communicate the strengths and weaknesses of the case, the improbability of an acquittal, and the correct maximum sentencing exposure. Blond asserts that "had counsel properly advised him, [he] would have been amenable to the pre-trial plea offer of 3 ½ years," which was "clearly in his best interests."

The Appellate Division rejected this claim as follows:

> Although [Blond] also claims that his counsel incorrectly advised him of the maximum sentence to which he was exposed while he was considering the pretrial offer, and despite the apparent mistake either in what counsel said on the record or what was transcribed when [Blond] rejected the pretrial offer against his counsel's advice, the affidavit [Blond] submitted in support of his CPL 440.10 motion confirms that, prior to proceeding to trial, he was well aware of the potential for a 25-year sentence on the top count of rape in the first degree.

*Blond*, 946 N.Y.S.2d at 667.

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler*, 132 S. Ct. at 1384. Criminal defendants are entitled to the effective assistance of competent counsel during plea negotiations. *Id.* "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 1387. Defense counsel has "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Defense counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2000); *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("[K]nowledge of the

comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); *Carrion v. Smith*, 644 F. Supp. 2d 452, 467 (S.D.N.Y. 2009). When a petitioner contends that counsel's defective advice caused him to reject a plea offer and proceed to trial, he has shown prejudice where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct at 1385.

There is no question here that the relevant terms of the plea offer were conveyed to Blond, as they were discussed in open court in Blond's presence. Counsel also stated in open court in Blond's presence that he had recommended that Blond take the plea offer in light of the likelihood of conviction on two of the charges. Counsel further represented that he had advised Blond of his full sentencing exposure and that the court had the discretion to sentence Blond to consecutive terms if found guilty.

Blond focuses on the fact that defense counsel stated that he had advised Blond that he should accept the plea offer because he could face up to 4 years in prison on two unidentified class B felony charges. Defense counsel's calculation was incorrect, as under New York Law, a defendant can face up to 25 years' imprisonment if convicted of a class B felony. N.Y. PENAL LAW § 70.00(2)(b). Nevertheless, defense counsel did not represent that this was the maximum exposure Blond faced, but that it was a sentence he supposedly faced on 2 of the 10 charges

against him. It is not clear what total sentencing exposure counsel advised Blond that he was subject to when they discussed the plea bargain off the record. Nevertheless, Blond cannot demonstrate that, but for counsel's error, there is a reasonable probability that he would have otherwise accepted the plea offer. At arraignment, the court advised Blond of the maximum exposure he faced on each individual charge, including informing him that he faced up to 25 years' imprisonment on the first-degree rape charge. In addition, as the Appellate Division noted, Blond stated in his CPL § 440.10 motion to vacate the judgment that he was "under constant pressure to take the plea" because he had received "threats of imprisonment of 25 years." Blond was therefore aware of his maximum exposure and elected to reject the plea offer of 3 ½ years in any event. Thus, he cannot show that he would have otherwise accepted the plea bargain had defense counsel not misstated his exposure on 2 individual counts, especially considering his concession that he continued to make "protestations of innocence" after hearing the victim's testimony against him and rejecting yet another plea offer. Blond is therefore not eligible for relief on this claim.

3.      *Failure to secure his right to testify at the grand jury (Claim 1(c))*

Blond next argues that trial counsel was ineffective for ignoring his request to testify before the grand jury. The Appellate Division rejected this claim on the ground that there was no evidence that Blond informed counsel of his desire to testify before the grand jury, and that failure to facilitate grand jury testimony is not *per se* ineffective assistance of counsel. *Blond*, 946 N.Y.S.2d at 667.

Blond's claim is not cognizable on federal habeas review because the right to present testimony before a grand jury is purely a matter of New York state law and not a federal

constitutional right. *Davis v. Mantello*, 42 F. App'x 488, 491 n.1 (2d Cir. 2002); *Hutchings v. Herbert*, 260 F. Supp. 2d 571, 577 (W.D.N.Y. 2003) ("It is . . . well settled that a criminal defendant's right to testify before the grand jury is not a constitutional right; rather, it is a creature of state statute."); *Gibbs v. New York*, No. 01 Civ. 5046, 2002 WL 31812682, at *4 (S.D.N.Y. 2002) (petitioner's claim that he was denied the opportunity to testify before the grand jury was not cognizable on federal habeas review because it is a right created by state law alone); N.Y. CRIM. PROC. LAW § 190.50. Even if counsel waived Blond's right to testify without Blond's permission, any prejudice was cured by his conviction. *See Turner v. Fischer,* Nos. 01-CV-3251, 03-MISC-0066, 2003 WL 22284177, at *6 (E.D.N.Y. Aug. 20, 2003) (Even "[a]ssuming . . . counsel waived [petitioner's] right to appear before the grand jury without petitioner's permission, petitioner cannot demonstrate that he was prejudiced thereby. He was afforded a jury trial and was convicted by a petit jury after testifying before it. Any prejudice suffered by petitioner was rendered harmless by his conviction at trial by the petit jury, which assessed his guilt under a heightened standard of proof."); *Keeling v. Varner,* Nos. 99-CV-6565, 03-MISC-0066, 2003 WL 21919433, at *7 (E.D.N.Y. June 17, 2003) ("Petitioner claims his counsel was ineffective because he did not inform him of his right to testify before the grand jury. . . . Claims regarding the conduct of the grand jury are not cognizable in a habeas proceeding where a petit jury has heard the evidence and convicted defendant. Counsel was not ineffective in this regard. Petitioner's fair trial and due process rights were not infringed.") (internal citation omitted); *Bingham v. Duncan,* 01 Civ. 1371, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) (Rejecting petitioner's claim that counsel was ineffective for failing to secure petitioner's right to testify before the grand jury: "Given that any defect in the grand jury

proceeding was cured by petitioner's subsequent conviction, . . . it necessarily follows as a matter of law that petitioner cannot establish that any errors made by his trial counsel with respect to the grand jury proceeding prejudiced him, thereby foreclosing the possibility of a Sixth Amendment violation.") (quotation, internal quotation marks and brackets omitted). Blond is therefore not entitled to relief on this claim.

4.      *Failure to object to the duplicitous nature of the indictment (Claim 1(d))*

Blond next argues that counsel was ineffective for failing to object to counts 1 through 4 of the indictment as duplicitous. According to Blond, counts 1 though 4 "encompassed such a multiplicity of acts that it was impossible to determine which acts the jury reached a unanimous verdict of guilty on." The Appellate Division rejected this claim, concluding that Blond received meaningful representation. *Blond*, 946 N.Y.S.2d at 667-68.

New York Criminal Procedure Law § 200.30(1) provides that "[e]ach count of an indictment may charge one offense only." "Hence, where a crime is made out by the commission of one act that act must be the only alleged offense alleged in the count. Put differently, acts which separately and individually make out distinct crimes must be charged in separate and distinct counts." *People v. Keindl*, 502 N.E.2d 577, 580 (N.Y. 1986). Counts 1 through 4 of the indictment charged Blond with: 1) "engag[ing] in sexual intercourse with a female person . . . by forcible compulsion" on or about May 2, 2008 (count 1); 2) "engag[ing] in sexual intercourse with . . . a female child . . . who is less than seventeen years old" on or about May 2, 2008 (count 2); 3) "engag[ing] in oral sexual conduct . . ., by putting his penis in the mount of a female child . . . who is less than seventeen years old" on or about May 2, 2008 (count 3); and 4) "insert[ing] his finger into the vagina of a female child . . . while she is less

than seventeen years of age" on or about the month of April 2008 (count 4). The four counts at issue charged Blond with 4 separate and distinct crimes and gave him adequate notice of the charges against him. Any objection by counsel or motion to dismiss the indictment on grounds of duplicitousness would have been meritless, and counsel cannot be ineffective for failing to raise a meritless claim. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims). Blond cannot prevail on this claim.

5.     *Failure to investigate and prepare for trial (Claim 1(e))*

Blond next raises a host of claims under his allegation that trial counsel was ineffective for failing to "prepare and properly investigate for trial."

First, Blond asserts that counsel failed to call "any medical experts on sexual abuse and rape," and that counsel "essentially conceded that the physical evidence was indicative of sexual penetration without conducting any investigation to determine if that was the case." He also claims counsel made a "nominal effort to contact witnesses."

The ultimate decision of whether to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand . . . ."). "The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute

incompetence as a basis for a claim of ineffective assistance of counsel." *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002); *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Claims that counsel was ineffective for failing to call certain witnesses are disfavored on habeas review because "allegations of what a witness would have testified [to] are largely speculative." *Speringo*, 202 F. Supp. 2d at 192 (citation omitted); *see also Montalvo v. Annetts*, 02 Civ. 1056, 2003 WL 22962504 (S.D.N.Y. Dec. 17, 2003) (the decision not to call a particular witness "generally should not be disturbed" because of "its inherently tactical nature").

Moreover, counsel did not concede that the prosecution's expert witness was correct in asserting that the physical evidence was indicative of sexual penetration. Counsel skillfully cross-examined JeanMarie Reid, a forensic nurse examiner with specialized training in conducting sexual assault exams, and was able to elicit that the victim's hymenal tears and the condition of her cervix and vagina could have been caused by something other than sexual intercourse. Nurse Reid agreed that the victim's injuries were not necessarily the result of sexual behavior. As to his claim that counsel made a nominal effort to contact other witnesses, Blond fails to specify which other witnesses should have been called or what would have been the thrust of their testimony, and his claim is therefore rejected. *See Baptiste v. Ercole*, 766 F. Supp. 2d 339, 363 (N.D.N.Y. 2011) ("Petitioner has not identified any witness counsel failed to call, nor has he set forth any facts or arguments in support of this assertion. Petitioner's vague and conclusory statement that counsel failed to call exculpatory witnesses is therefore denied." (citing *Blackledge v. Allison,* 431 U.S. 63, 75 (1977))).

Second, Blond claims that counsel was ineffective for failing to object to the prosecution's comments during summation.  However, as discussed *infra*, the prosecution's comments did not amount to misconduct, and again, counsel is not ineffective for failing to raise a meritless argument.  *Lockhart*, 506 U.S. at 374; *Aparicio*, 269 F.3d at 99.

Blond additionally claims that counsel 1) failed to gather evidence against Blond; 2) only briefly met with him; 3) failed to interview other, unspecified witnesses; 4) failed to research relevant law; 5) failed to put forth a defense; 6) failed to consult with Blond before filing the omnibus motion; 7) failed to request the severance of unspecified charges; 8) failed to "minimize prejudice" against Blond; 9) failed to move for a mistrial at five different points in the trial; and 10) made only general objections.  Blond has failed to include any facts or argument to support these claims.  All Blond offers are conclusory, self-serving statements, which are insufficient to support an ineffective assistance of counsel claim.  *See Larweth v. Conway*, 493 F. Supp. 2d 662, 670-71 (W.D.N.Y. 2007); *Skeete v. People of New York State,* No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003).

Moreover, as Appellate Division noted, Blond overall received the effective assistance of counsel as required by the Sixth Amendment:

> When viewed in their totality, the circumstances reveal that counsel was prepared, made appropriate pretrial motions, pursued a credible defense strategy, made cogent opening and closing statements, ably cross-examined the People's witnesses, presented witnesses on the defense case and obtained dismissal of two counts of the indictment. We have considered all of the ineffective assistance claims, including each of those made by defendant in his pro se brief, and find that he received meaningful representation.

*Blond*, 946 N.Y.S.2d at 667-68.

The Appellate Division's conclusion is supported by the record, and Blond accordingly cannot prevail on this claim.

6.  *Failure to move to inspect the grand jury minutes and dismiss the indictment (Claim 1(f))*

Blond next argues that his counsel filed an omnibus motion requesting that the court inspect the grand jury minutes and reduce or dismiss the charges set forth in the indictment. He claims that the court ordered the People to produce the grand jury minutes, but that the People did not comply. He asserts that the court never revisited the omnibus motion and that defense counsel failed to renew his motion for inspection of the minutes. Blond claims that counsel's failure to do so denied him "his due process right to have insufficient, or inadequate counts in the indictment reduced or dismissed, and as such, the prejudice is manifest."

Blond is not entitled to relief because claims of error in New York grand jury proceedings, including allegations that the evidence was insufficient to indict, are not cognizable in federal habeas corpus proceedings where, as here, Blond has been convicted by a petit jury. *See Lopez v. Riley*, 865 F.2d 30, 32-33 (2d Cir. 1989); *Afrika v. New York*, No. 12-CV-0537, 2013 WL 5936999, at *6 (W.D.N.Y. Nov. 4, 2013). Blond therefore cannot prevail on this claim.

C.  Inquiry into the Presence of a Sleeping Juror (Claim 2)

During trial, the court asked the clerk to "nudge" a juror who apparently appeared to be sleeping, acknowledging that it had "been a long day." The following day, defense counsel asked if either the prosecution or the court had observed the juror sleeping again that day. The court stated that it was "constantly observing the jury," and that it had "stopped the proceeding" the previous day because it had briefly observed the juror sleeping. Since then, the court was "constantly looking" and "watch[ing] [the juror in question] specifically," and did not notice her

sleeping.  The court would have stopped the proceeding again if it had observed her sleeping.

Defense counsel replied, "Fine, judge."

Blond argues that he was "denied a fair and impartial jury trial based on a sleeping juror."  Blond claims that the trial court was required under CPL § 270.35 to inquire of the juror how much testimony she missed and whether she was qualified to continue serving.  As discussed *supra*, this claim is unexhausted and procedurally defaulted because Blond raised this claim on direct appeal only on state-law grounds.

The Appellate Division concluded that the claim was unpreserved because Blond failed to request that the court conduct an inquiry of the sleeping juror and did not object to the juror's continued service, citing *People v. Galloway*, 94 N.Y.S.2d 699, 702 (N.Y. App. Div. 2012) (defendant failed to preserve for appellate review his claim that he was denied a fair trial based on the selection of two jurors because he failed to make appropriate objections at trial).  *Blond*, 946 N.Y.S.2d at 667.  The court alternatively concluded that the trial court's "observations provided it with an adequate basis for its conclusion that the juror had not missed a significant portion of the trial testimony and, therefore, was not grossly unqualified to continue to serve as a juror."  *Id.*

Blond's claim is barred from federal habeas review because the Appellate Division relied on an independent and adequate state ground to dismiss it.  *See Coleman*, 501 U.S. at 729 (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").  Where a state-court holding contains a plain statement that a claim is procedurally barred, a federal habeas court may not review it, even if, as here, the state court also

rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10

(1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an

*alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for

its decision); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). The New York procedural

rule that a party must preserve an issue with a contemporaneous objection is recognized as an

independent and adequate state law ground for dismissal. *Garvey v. Duncan*, 485 F.3d 709, 714-

15 (2d Cir. 2007); *Richardson v. Greene*, 497 F.3d 212, 218-20 (2d Cir. 2007).

To avoid a procedural bar, a petitioner must demonstrate either cause for the default and

actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage

of justice, i.e., that he is actually innocent of the crime for which he has been convicted.

*Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *Dunham

v. Travis*, 313 F.3d 724, 729 (2d Cir. 2002). "'Actual innocence' means factual innocence, not

mere legal insufficiency." *Dunham*, 313 F.3d at 730 (quoting *Bousley v. United States*, 523 U.S.

614, 623 (1998) (internal brackets omitted)). Blond has not carried his burden. However,

recognizing that Blond is proceeding *pro se* and that his pleadings must be liberally construed,

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court nonetheless will address the

merits of this claim.

In addition, to the extent Blond asserts that the trial court failed to comply with CPL

§ 270.35, Repondent correctly notes that he raises an issue purely of state law. *See Hameed v.

Jones,* 750 F.2d 154, 160 (2d Cir. 1984); *Faria v. Perez*, 04-CV-2411, 2012 WL 3800826

(E.D.N.Y. Sept. 2, 2012). As such, this claim does not present a federal question cognizable on

habeas corpus review. *See Estelle,* 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Nevertheless, even if Blond's claim were reviewable in this forum, it still fails. Habeas relief is available for juror misconduct only where a petitioner can demonstrate that he has suffered prejudice as a result. *See Knapp v. Leonardo,* 46 F.3d 170, 176 (2d Cir. 1995) (citing *Irvin v. Dowd,* 366 U.S. 717, 724 (1961)). A trial court is in the best position to assess alleged juror misconduct. *See Wainwright v. Witt,* 469 U.S. 412, 424-26 (1985); *United States v. Parker,* 903 F.2d 91, 101 (2d Cir. 1990). Moreover, a trial judge has "wide discretion to decide upon the appropriate course to take, in view of his personal observations of the jurors and parties." *United States v. Aiello,* 771 F.2d 621, 629 (2d Cir. 1985); *see also Jones v. Donnelly,* 487 F. Supp. 2d 403, 414 (S.D.N.Y. 2007).

Here, the court noted that the juror was sleeping only briefly the previous day, and that it asked the clerk to alert her. The court informed the parties that it was constantly watching that juror specifically and that it was prepared to stop proceedings if she was observed sleeping again in court. Defense counsel did not object to retaining that juror, and there is no evidence that the juror's brief period of sleeping adversely affected the jury's deliberations or had an injurious effect on its ultimate conclusions. *United States v. Diaz*, 176 F.3d 52, 78 (2d Cir. 1999) (trial court did not abuse its discretion in denying motion to remove sleeping juror where the trial court, "from the moment the sleeping juror allegation was raised, investigated the matter and carefully observed the juror in question throughout the trial," observing that the juror "perhaps had slept for a brief moment" and was otherwise alert and attentive); *see also United States v. Steele*, 390 F. App'x 6, 14 (2d Cir. 2010) (trial court did not abuse its discretion in failing to

remove sleeping juror where it carefully observed the juror and brought the situation to the attention of the parties, neither party objected to the district court's actions, and the appellate court "infer[red] from the [trial] court's diligence that it continued to monitor the juror"); *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000) ("[A] court is not invariably required to remove sleeping jurors, and a court has considerable discretion in deciding how to handle a sleeping juror.") (internal citations omitted). Blond is therefore not entitled to relief on this claim.

D. *Non-specific and Duplicitous Indictment* (Claim 3)

Blond next argues that counts 1 through 4 of the indictment were non-specific and duplicitous in violation of the right against double jeopardy, the right to a trial by jury, and the right to notice of the charges against him. Specifically, Blond argues that because the indictment uses "on or about" language to identify the dates of the alleged crimes, it suggested "the possibility of overlapping crimes." He further argues that "the grand jury and trial made clear that [counts 1 through 4] were or did encompass such a multiplicity of acts that it was virtually impossible to have determined the particular acts to which the jury could have reached a unanimous verdict on." Blond suggests that the trial court should have *sua sponte* dismissed counts 1 through 4. The Appellate Division dismissed this claim as unpreserved and without merit. This claim is unexhausted, procedurally defaulted, and Blond has failed to assert cause or prejudice to avoid procedural bar. *Coleman*, 501 U.S. at 749-50.

"It is . . . well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review." *United States v. Logan*, 845 F. Supp. 2d 499, 518 (E.D.N.Y. 2012) (citing *Davis*, 42 F. App'x at 490 ("Claims of deficiencies in state grand jury proceedings

are not cognizable in a habeas corpus proceeding in federal court.")); *Gray v. Khahaifa,* No. 08 Civ. 4889, 2010 WL 2653340, at *11 (E.D.N.Y. June 24, 2010) ("A challenge to the sufficiency of a state indictment is not cognizable on habeas review . . . ."); *Humphrey v. Fisher,* No. 07 Civ. 1200, 2010 WL 7417094, at *19 (N.D.N.Y. July 23, 2010) ("It is well-settled that challenges to the sufficiency of an indictment are generally not cognizable on habeas review.").

"The only instance in which a defect in an indictment is cognizable on habeas review is if 'the indictment falls below basic constitutional standards.'" *Logan*, 845 F. Supp. 2d at 518 (quoting *Carroll v. Hoke,* 695 F.Supp. 1435, 1438 (E.D.N.Y. 1988)). An indictment is deemed constitutionally sufficient if "it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *DeVonish v. Keane,* 19 F.3d 107, 108 (2d Cir. 1994) (quotations and citations omitted). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir. 1975)).

Here, counts 1 through 4 tracked the charging statutes and identified the location and approximate dates of the alleged crimes. Blond's claim that the use of "on or about" terms to identify the date of the offenses renders the indictment constitutionally defective is without merit because an indictment may state the date of an alleged crime in approximate terms. *Stavroulakis,* 952 F.2d at 693; *see DeVonish*, 19 F.3d at 109 (petitioner's indictment "satisfied the Constitution's minimum standards since it tracked the language [of the statute charged], and

stated the approximate time and place of the alleged crime").  Blond cannot therefore prevail on this claim.

E.     *Molineux/Ventimiglia* Evidence (Claim 4)

Blond next argues that "the erroneous ruling and admission of the extensive *Molineux/Ventimiglia* evidence deprive[d] him of his fair trial and substantial rights, because its per se prejudicial effect far outweighed its probative value."  Blond further asserts that the "trial court failed its duty to give limit[ing] instructions at the time this evidence was given to minimize prejudice to [him], and this evidence offer by the state limited [his] defense to the charges."

The Appellate Division described the facts of this claim and denied Blond relief as follows:

> Prior to trial, Supreme Court held a *Molineux/Ventimiglia* hearing and determined that the People would be allowed to offer evidence of prior domestic violence and abusive behavior by [Blond] for the purposes of establishing the element of forcible compulsion, providing necessary background information on the nature of the relationship and placing the charged conduct in context.  [Blond] concedes that there was a proper nonpropensity purpose for the admission of the evidence, but he argues that the probative value of these prior bad acts was outweighed by their prejudicial nature.  We cannot agree.  Supreme Court balanced the probative value and prejudicial nature of the evidence by limiting it to specific acts of violence that were witnessed by the victim and occurred after she began residing with defendant and his wife.  The evidence has substantial probative value and provided necessary background information regarding the victim's fear of [Blond] and resulting unwillingness to tell anyone about the sexual abuse until after he was in police custody as a result of his most recent violent altercation with his wife.  As contemporaneous limiting instructions on the use of such evidence were given twice during the trial, as well as in the final jury charge, any error in failing to give the instructions a third time after the wife's testimony—a failure that was not called to the court's attention by counsel—is harmless.

*Blond*, 946 N.Y.S.2d at 665.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  On direct appeal, the appellate court determined that, in line with New York state case law, the trial court properly allowed evidence of prior domestic violence and abusive behavior by Blond, that its probative value was outweighed by their prejudicial nature, and that appropriate limiting instructions were given.  This Court is bound by the state court's interpretation of New York state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Blond did not raise before that court and does not raise in his Petition before this Court an issue of federal constitutional dimension, and the Supreme Court specifically expressed "no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."  *Estelle*, 502 U.S. at 75 n.5; *see also Mercedes v. McGuire*, No. 08-CV-299, 2010 WL 1936227, at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim that the use of uncharged crimes violated his due process rights was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes"); *Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004) (the Supreme Court has yet to clearly establish "when the admission of evidence of prior crimes

under state evidentiary laws can constitute a federal due process violation").  Blond therefore cannot prevail on this claim.

F.      Prosecutorial Misconduct (Claim 5)

Blond next argues that the prosecutor committed misconduct by: 1) introducing evidence of his prior bad acts and uncharged crimes; 2) "badger[ing]" witness Jean Blond; and 3) arguing in summation that "she vouched for the credibility of the state's witnesses, mischaracterized Blond's testimony . . ., denginated [sic] the defense and defense counsel, and advocated as an unsworn witness by injecting her personal beiefs and extra record comments."  The Appellate Division denied Blond relief on this claim on the ground that it was unpreserved and without merit.  Blond has failed to assert any cause or prejudice sufficient to overcome procedural bar.  *Coleman*, 501 U.S. at 749-50.

In any event, his claim is without merit.  "The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power."  *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1998) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)).  The petitioner must demonstrate that the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden*, 477 U.S. at 181).  The court must look at the totality of the circumstances in deciding whether the egregiousness of the prosecutor's alleged misconduct justifies relief.  *United States v. Young*, 470 U.S. 1, 11-12 (1985).  In the Second Circuit, this inquiry includes three factors: (1) the severity of the prosecutor's misconduct, (2) any curative measures taken by the court; and (3) the certainty of the conviction without the

prosecutor's comments. *See, e.g., United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995); *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994); *Floyd*, 907 F.2d at 355. Standing alone, prosecutorial misconduct is insufficient to overturn a conviction. *Duran v. Miller*, 322 F. Supp. 2d 251, 259 (E.D.N.Y. 2004).

With respect to his claim that the prosecution improperly introduced evidence of Blond's prior uncharged crimes or bad acts, Blond has not demonstrated that the prosecution strayed from the court's ruling that it could admit the evidence for certain purposes, and as the Appellate Division noted, the court gave proper limiting instructions with respect to the admission of that evidence. Accordingly, he has failed to establish any misconduct whatsoever.

Blond's next claim that the prosecution committed misconduct by improperly badgering a witness is also unsupported by the record. Defense counsel called Jean Blond, Blond's sister, to testify as to acts of violence she had observed between Blond and his wife, Hudson, which the sexual assault victim might have witnessed. A review of the transcripts indicates that the prosecutor's questions were all in response to Jean's testimony or questions regarding her criminal history, including open warrants for arrest. Defense counsel did not object on the grounds of badgering, likely because any such objection would have been meritless. The United States Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). Accordingly, subject to the discretion of the trial judge to preclude repetitive and unduly harsh interrogation, a cross-examiner is allowed to impeach a witness by introducing evidence of that witness's prior criminal history. *Id.* at 317. The prosecution's cross-examination of Jean Blond was therefore proper.

Jean was arrested outside the courtroom on an outstanding warrant or warrants after she testified. The court notified counsel for both parties that the courtroom door was not likely completely closed when Jean was arrested, and that the jury might have accordingly "heard the handcuffs being placed upon the witness." Defense counsel suggested that the court issue a limiting instruction, and when trial resumed, the court immediately admonished the jury as follows:

> Ladies and gentlemen, I provide you at this time with further instruction. The last witness who testified, testified and acknowledged–questions were asked regarding active warrants, and I think she may have testified she wasn't aware of same. In any event if you heard or saw anything immediately outside this courtroom while counsel and I were in the deliberation room pertaining to certain legal processes undertaken with regard to that witness, you're to disregard that. You're not to speculate. Understand the fact that someone may or may not have had an active warrant is no evidence of any guilt; it's all part of the legal process.

A jury is presumed to follow a court's instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and there is no evidence that the prosecution, either by act or omission, somehow played a part in Jean's arrest being heard or otherwise witnessed by the jury. Again, Blond has not demonstrated misconduct.

With respect to summation, Blond fails to identify the specific comments he finds objectionable. Blond argues that the prosecution suggested that he was lying, "vouched for the credibility of the state's witnesses," "denigrated [sic] the defense and defense counsel," and "advocated as an unsworn witness by injecting her personal beliefs and extra record comments." Blond's claim is not supported by the record in any event. In summation, the prosecutor argued that defense counsel was "grabbing at straws" and that Blond's version of events didn't "make sense" and was "incredible." However, because Blond testified at trial, the prosecution was permitted to fairly comment during summation on his credibility as a witness. *Portuondo v.*

*Agard*, 529 U.S. 61, 69 (2000); *Perry v. Leeke*, 488 U.S. 272, 282 (1989) ("[W]hen [a defendant] assumes the role of a witness, the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well."). The prosecution did not manipulate or misstate the evidence; rather, the prosecution repeatedly urged the jury to refer back to the evidence in reaching a verdict. *Darden*, 477 U.S. at 169 (1986) (prosecution's improper comments during summation did not deny petitioner of a fair trial where the prosecution did not manipulate or misstate the evidence or implicate other specific rights of the accused). Nor did the prosecution vouch for the credibility of any witness or inject her personal opinion into closing argument. *Cf. Floyd*, 907 F.2d at 354 (2d Cir. 1990) (discussing the impropriety of the prosecution's request that the jury pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for a witnesess's testimony). Collectively, the prosecutions's comments come nowhere near comments that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Blond is therefore not entitled to relief on this claim.

G.    Denial of Right to Present Testimony of Three Social Workers (Claim 6)

Blond next argues that the court improperly denied him his right to offer "testimony of three clinician/social workers to impeach the credibility of [the victim's] complaint of daily sexual abuse and rape." The Appellate Division denied Blond relief on this claim as follows:

> [Blond] also contends that Supreme Court improperly precluded him from calling three social workers to testify that they had conducted a statement validity analysis test of the victim for use in Family Court, where such testimony is authorized if it tends to support the reliability of a child victim's out-of-court statement of abuse or neglect. [Blond] concedes that such opinion evidence cannot be used in a criminal proceeding by the People during their case-in-chief, but argues that it should be admissible for purposes

-34-

of impeachment where, as here, such validation testing fails to corroborate the victim's claims. We are not persuaded, however, as there is no corresponding statutory authority for the admission of such evidence in a criminal proceeding. Moreover, [Blond] was otherwise fully able to attack the victim's credibility through cross-examination based on her alleged bias in favor of the wife and her failure to report her accusations earlier.

*Blond*, 946 N.Y.S.2d at 667.

As already discussed, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689, and has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence, *Estelle*, 502 U.S. at 72 (citations omitted). This Court is bound by the state court's interpretation that New York law permitted the admission of such evidence in family court but not in a criminal proceeding. *Bradshaw*, 546 U.S. 74, 76 (2005). Moreover, there is no evidence that Blond was deprived of a fair trial because, as the Appellate Division noted, defense counsel was able to cross-examine the victim and call her credibility into question. *See Washington v. Scriver*, 255 F.3d 45, 56 (2d Cir. 2001) ("state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness"). Blond is therefore not entitled to relief on this claim.

H.    Insufficiency of the Evidence (Claim 7)

Blond next argues that the evidence was legally insufficient to convict him of counts 1, 2, 3, 6 and 8.

The Appellate Division denied Blond relief on this claim, concluding as follows:

We next turn to [Blond's] allegations that the People failed to establish forcible compulsion with respect to the charge of rape in the first degree, that the verdicts were contrary to the physical evidence and that the victim's testimony was incredible as a matter of law. In evaluating the legal sufficiency of the evidence, we view it in a light

most favorable to the People and will not disturb a verdict as long as there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury."  As relevant here, forcible compulsion includes "a threat, express or implied, which places a person in fear of . . . physical injury to . . . herself or another person."  In determining whether an implied threat existed, the jury could consider the victim's age relative to that of [Blond], the relationship between them and the victim's fear of what [Blond] might have done if she did not comply.

The People's evidence established that the victim had witnessed numerous instances of violence by [Blond] against his wife since she had moved in with the couple in October 2007.

During the early morning hours of May 2, 2008, when the victim was 15 years old, the 29-year-old [Blond] demanded sex and, when she said no, he pulled her pants down, maneuvered her to the floor and held her there while he had intercourse with her. The victim testified that she was afraid to cry out for fear that it would only lead to more physical violence by [Blond].  The victim's testimony regarding a number of sexually abusive encounters with [Blond] during the relatively short time frame in which she resided in his home, her fear of [Blond], his use of physical force to hold her down, as well as the atmosphere of physical violence and intimidation she had witnessed were sufficient to establish the element of forcible compulsion.

A physical examination of the victim performed a few days after the rape revealed recent injuries to her hymen and irritation consistent with the reported sexual activity. The evidence also showed that a pair of the victim's jeans—which had [Blond's] semen on them—were recovered by the police during a search of [Blond's] home.  [Blond] points to no inconsistencies or other aspects of the victim's testimony that would render it incredible as a matter of law.  In short, our review of the record convinces us that the evidence was legally sufficient to satisfy each element of every crime for which [Blond] was convicted.  Furthermore, upon our independent review of the evidence in a neutral light, with due regard to the jury's credibility determinations, we find that the verdicts are not against the weight of the evidence.

*Blond*, 946 N.Y.S.2d at 666-67.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the New York court unreasonably applied *Jackson*.  In

making this determination, this Court may not usurp the role of the finder of fact by considering

how it would have resolved any conflicts in the evidence, made the inferences, or considered the

evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical

facts that supports conflicting inferences," this Court "must presume–even if it does not

affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the

prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority

for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

Consequently, although the sufficiency of the evidence review by this Court is grounded in the

Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set

forth in state law. *Jackson*, 443 U.S. at 324 n.16; *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d

Cir. 2002) ("When considering the sufficiency of the evidence of a state conviction, a federal

court must look to state law to determine the elements of the crime." (citation, internal brackets

and quotation marks omitted)). A fundamental principle of our federal system is "that a state

court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. "Federal

courts hold no supervisory authority over state judicial proceedings and may intervene only to

correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345

(2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

It is through this lens that this Court must view an insufficiency of the evidence claim.

1.      *Counts 1, 2, and 3*

Count 1 charged Blond with first-degree rape in violation of New York Penal Law §

130.35(1).  A person "is guilty of rape in the first degree when he or she engages in sexual

intercourse with another person . . . [b]y forcible compulsion."  N.Y. PENAL LAW § 130.35(1).

"Forcible compulsion" means to compel by either use of physical force or "a threat, express or

implied, which places a person in fear of immediate death or physical injury to himself, herself

or another person, or in fear that he, she or another person will immediately be kidnapped."

N.Y. PENAL LAW § 130.00(8).  New York Courts have held that "prior and concurrent threats

and violence to the victim's family and uncharged sexual assaults and threats against the victim

are admissible as proof of the element of forcible compulsion and to explain the victim's failure

to reveal the ongoing sexual assaults."  *People v. Greene*, 760 N.Y.S.2d 769, 773 (N.Y. App.

Div. 2003).

Count 2 charged Blond with third-degree rape in violation of New York Penal Law §

130.25(2).  A person "is guilty of rape in the third degree when . . . [b]eing twenty-one years old

or more, he or she engages in sexual intercourse with another person less than seventeen years

old."  N.Y. PENAL LAW § 130.25(2).

Count 3 charged Blond with third-degree criminal sexual act in violation of New York

Penal Law § 130.40(2).  A person "is guilty of criminal sexual act in the third degree when . . .

"[b]eing twenty-one years old or more, he or she engages in oral sexual conduct . . . with a

person less than seventeen years old."  N.Y. PENAL LAW § 130.40(2).

The victim testified as to specific instances of violence she had observed by Blond,

including an instance where he pushed and repeatedly hit Hudson and disabled the telephones so

no one could call the police. She had also observed him hit Hudson's children. The victim also testified that Blond had "smack[ed] [her in] the face," punched her, and verbally abused her. She stated that she occasionally skipped school because she was "afraid of [Hudson's] safety in the house." Blond was sexually abusing the victim "almost every day of the week."

On May 2, 2008, when the victim was 15 years old, Blond started making loud noises in the middle of the night. The victim and Hudson were woken up by the noise and went into the living room to watch television because they could not fall back asleep. Hudson went back to bed around 5 a.m. The victim wanted to go back to bed, but Blond told her that she "shouldn't go to bed, . . . that he was horny and . . . if [she] gave him some, which [she] knew [] meant sex, that he would leave [the victim and Hudson] alone and that he wouldn't continue to bother [them]." The victim said "no," but Blond approached her and partially pulled her pants down. Blond told her to perform oral sex on him, and she did. He started to pull her pants down more and the victim said "no," but then she "figured it was going to happen" and it "would have been forced" so she pulled her pants off the rest of the way herself. Blond put his penis in her vagina while she was standing. Blond then "grabbed [her] down to the ground," "pull[ed] [her] legs open" and put his penis in her vagina again. The victim tried to get up, but Blond held her legs down. She did not yell or scream out for her aunt because she was afraid that "violence in the house would have got worse."

At the time of the conduct, the victim was 15, and Blond does not contest that he was over 21 years old. Although he argues that the victim's testimony was not corroborated, in New York a victim's testimony alone can be sufficient, if found credible by a jury, to establish first-degree rape by forcible compulsion. *People v. Alford*, 731 N.Y.S.2d 563, 565-65 (N.Y. App.

Div. 2001) ("[C]orroboration is not required to establish rape or other sex offenses under Penal Law article 130 which include forcible compulsion as an element."). Her testimony was also sufficient to establish third-degree rape and third-degree criminal sexual act because her incapacity to consent was a product of her age. *See id.* at 566. Although Blond urges this Court to find the victim's testimony "incredible," "[i]t is beyond cavil that a reviewing court must defer to the trier-of-fact's assessment of witness credibility." *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 312 (W.D.N.Y. 2011). The victim's testimony, which the jury found credible, was sufficient to support a conviction on first- and third-degree rape as well as criminal sexual act in the third degree. Blond cannot prevail on this claim.

       2.     *Count 6*

Count 6 charged Blond with second-degree attempted assault in violation of New York Penal Law §§ 110 & 120.05(2). A person is guilty of second-degree attempted assault where, with intent to cause physical injury to another person, he attempts to cause such injury "by means of a deadly weapon or a dangerous instrument." N.Y. PENAL LAW §§ 110, 120.05(2). Both Hudson and the victim testified that Blond struck Hudson in the head with a brick during an argument. Hudson also testified that her head was sore for days afterwards. A jury could have reasonably found Blond guilty of the second-degree attempted assault of Hudson, and therefore he cannot prevail on this claim.

       3.     *Count 8*

Count 8 charged Blond with third-degree criminal mischief in violation of New York Penal Law § 145.05. A person "is guilty of criminal mischief in the third degree when, with an intent to damage property of another person, and having no right to do so . . ., he . . . damages

property of another in an amount exceeding two hundred and fifty dollars."  N.Y. PENAL LAW §

145.05(2).  Hudson testified that after the incident in which Blond struck her in the head with a

brick, she went to stay with her sister, Rene Minus.  She later went back to the home she shared

with Blond to pick up some clothes as well as her vehicle, a Kia Rio which was registered in her

name.  She returned to Minus's home, looked out the window and observed Blond drive his Ford

Taurus into her Kia Rio.  Blond then "popped the hood [on the Kia Rio] and proceeded to go into

the car and take out the plugs and stuff like that."  Lisa Kaese, a Lia Collision Center manager,

testified that the "entire right side" of the Kia was damaged and that she appraised the damage at

$4,000.  Thus, the jury could have reasonably found Blond guilty of third-degree criminal

mischief, and he cannot prevail on this claim.

I.      Vindictive Sentence (Claim 8)

        Blond lastly argues that his "sentence would have been shorter had counsel properly

advised Blond of the maximum sentencing exposure he could face after being found guilty at

trial . . . and if the court did not vindictively sentence [him] for exercising his right to a jury

trial."  His claim in unexhausted because he failed to raise it in his petition for review to the New

York Court of Appeals.  In any event, it is without merit.

        As an initial matter, as discussed *supra*, although defense counsel did misstate Blond's

maximum sentencing exposure with respect to class B felonies, Blond fails to assert how

counsel's mistake had any bearing on the court's sentencing decision.

        With respect to his claim that the trial court vindictively sentenced him for exercising his

right to trial, the Appellate Division rejected this claim as follows:

                With respect to the sentence, [Blond] argues that the disparity between the final
        pretrial offer of 3 ½ years in prison and the sentence ultimately imposed reflects an

extreme penalty for his exercise of his right to a jury trial. Although the disparity is significant, there is no record evidence that the sentences were retaliatory or vindictively imposed as a penalty for [Blond's] exercise of his right to a jury trial. We must agree with Supreme Court that the crimes are of a serious nature, they were committed against a backdrop of physical violence, they involved a vulnerable teenager who was living [Blond's] household, he received less than the maximum allowable sentence for rape in the first degree and he has refused to take any responsibility for his conduct or exhibit any remorse. Accordingly, we can find no abuse of discretion or extraordinary circumstances that would warrant our modification of the sentence.

*Blond*, 946 N.Y.S.2d at 668.

A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right such as the right to a jury trial or the right to appeal. *Wasman v. United States*, 468 U.S. 559, 567-68 (1984) (citations omitted); *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, the Supreme Court has likewise noted that a defendant in plea bargaining circumstances will often be "confronted with the certainty or probability that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence than would have followed a waiver of those rights." *Chaffin v. Stynchcombe*, 412 U.S. 17, 30-31 (1973) (citation and internal quotation marks omitted). Thus, the fact that a petitioner receives a greater sentence than one previously offered in plea negotiations does not, by itself, establish vindictive sentencing. *See, e.g.*, *Edwards v. Artus*, 06-CV-5995, 2009 WL 742735 (E.D.N.Y. Mar. 20, 2009) ("[I]n the absence of proof of actual vindictiveness, the Supreme Court has upheld as perfectly constitutional the disparity between a sentence negotiated as part of a plea and one imposed after a trial."). In this case, Blond provides no evidence aside from the disparity in the

original plea offer and ultimate sentence imposed to suggest that his sentence was vindictive, and he therefore cannot prevail on this claim.

## V. CONCLUSION AND ORDER

Blond is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Second Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 5, 2014.

                                               <u>/s/James K. Singleton, Jr.</u>
                                                JAMES K. SINGLETON, JR.
                                             Senior United States District Judge